# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DARRELL COPELAND, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. JKB-17-0013 |
| DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, COMMISSONER DEYENA CORCORAN, LT. SMITH, DENNIS MARTIN, RN, JOHN DOE, SUPERINTENDENT OF PSYCHOLOGY DEPARTMENT, and DENISE GELSINGER, | * * * * * | |
| Defendants | *** | |

## MEMORANDUM OPINION

Darrell Copeland, a former prisoner, filed this self-represented civil rights action against the Department of Public Safety and Correctional Services (DPSCS); Deyena Corcoran, DPSCS Commissioner; Denise Gelsinger, Warden of Western Correctional Institution (WCI);[1] Lieutenant Smith, an officer at WCI; Dennis Martin, a nurse at WCI; and the Superintendent of the Psychology Department at WCI, whom Plaintiff names John Doe. ECF No. 1. Except for DPSCS, Plaintiff brought suit against all Defendants in their official and individual capacities. ECF No. 1 at 3.

The Defendants have filed Motions to Dismiss or, in the Alternative, Motions for Summary Judgment. ECF Nos. 26 (Defendant Martin's Motion); ECF No. 30 (Motion from

---

[1] Plaintiff's complaint named former WCI Warden Richard Graham as a Defendant; however, Gelsinger was later substituted for Graham at Plaintiff's request. ECF Nos. 16, 17.

Defendants DPSCS, Corcoran, Gelsinger, and Smith).[2] Plaintiff filed a Response in Opposition to one of the Motions to Dismiss. ECF No. 32 (responding to ECF No. 30). The matter is now ripe for review. No hearing is necessary to resolve the motion. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, the court DISMISSES Defendant Doe and GRANTS Defendant Martin's Motion to Dismiss. As to the remaining Defendants' motion, the court GRANTS the Motion to Dismiss as to DPSCS, Corcoran, and Gelsinger, and GRANTS the Alternative Motion for Summary Judgment as to Defendant Smith.

### I. Complaint Allegations

Plaintiff filed a verified complaint alleging that:

On February 17, 2016, Defendant Lt. Smith, along with four other officers, placed me in a cell, cell B2, in Housing Unit 4 pending an adjustment hearing; the cell was heavily infested with ants and rodents; feces covered the floors and walls; I was never giv[en] a mattr[e]ss and was forced to sleep on the floor for 48 hours which worsened my preexisting back injury, causing me severe back spasms for several weeks. Though I was prescribed medical treatment in the form of 500 mg Rob[a]xin, on 2/17/2016 the nurse on the 4 to 12 shift denied me medical treatment and all other medical treatment there after.

ECF No. 1 at 3 (some capitalization altered). Plaintiff asserted that this treatment constituted cruel and unusual punishment and deliberate indifference to his medical needs in violation of the Eighth and Fourteenth Amendments. ECF No. 1 at 3.

In a declaration that attached to his complaint, Plaintiff stated:

On 2-17-16 I was placed in cell 4-B-2 with no clothes except for my boxers, socks, and a tank top even though the cell was cold with minimal heat. There were feces stains throughout the cell, ants were in abundance along the cracks of the floor and the wall where I had to stay close in order to benefit from the little bit of heat present in the cell. At meal times John Doe officers would throw my food on the floor of the dirty cell. The food would be in a brown paper bag that was often wet from the contents within it which would cause some of the contents to rip through the bag and spill onto the floor. I was also deprived of my medication for my back pains, migra[i]nes and rhinitis for 24 hours even though I wasn't given a mattress, jumpsuit or basic hyg[i]ene necessities. I made several

---
[2] Defendant John Doe, Superintendent of Psychology Department, was not included as a party to either motion.

attempts to make the John Doe officers that passed by the cell aware of my conditions and the conditions of the cell but I was ignored.

. . .

Defendants Lt. Smith and other John Doe officers violated my Eighth and Fourteenth Amendments to Freedom from Cruel and Unusual Punishment[.]

Defendants Corcoran and Gelsinger violated my 8th and 14th Amendments to Freedom from Cruel and Unusual punishment by failing to hold accountable defendants John Doe and Lt. Smith and instigating their behavior.

ECF No. 1-4.

On March 17, 2016, nearly a month after his 48-hour placement in cell 4B2 ended, Plaintiff filed an administrative grievance concerning the cell condition, lack of mattress, and missed dosage of Robaxin. ECF No. 1-2 at 1-2. Defendant Gelsinger dismissed Plaintiff's grievance, stating:

> Further investigation has revealed that you were placed in cell 4B2 on Staff Alert Status due to your disruptive activities while at RCI and circumstances surrounding your transfer. You were given basic clothing, jumpsuit, and a mattress. Cells are cleaned numerous times per week when inmates are not occupying the cell to ensure cleanliness. You were moved from 4B2 on 2/19/16, at which time you were seen by medical and reported no injuries or issues. You have been unable to provide substantial evidence to show that you were treated unprofessionally in any manner. No further actions will be taken at this time.

ECF No. 1-2 at 1. Plaintiff appealed the denial of his administrative grievance, and Defendant Corcoran dismissed the appeal. ECF No. 1-2 at 3-5.

## II. Defendants' Responses

Defendant Martin filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 26. Martin argued that Plaintiff failed to allege that Martin was involved in placing Plaintiff in cell 4B2 and that "it is entirely unclear whether Plaintiff's allegations of being denied medication are even directed at this Defendant." ECF No. 26-1 at 2. Further, Martin noted that Plaintiff's administrative requests submitted in connection with this claim and

filed with Plaintiff's complaint alleged that Plaintiff was denied medication even though he had "informed Jane Doe that [he] was to get them." ECF No. 1-2 at 2. Thus, Martin contends that Plaintiff's reference to Jane Doe "establishes that the nurse who Plaintiff alleges denied him treatment was female, unlike [Martin] who is male." ECF No. 26-1 at 2. Although warned of the possible consequences for failing to do so, ECF No. 27, Plaintiff did not respond to Martin's Motion.

Following Martin's motion, Defendants DPSCS, Corcoran, Gelsinger, and Smith jointly filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 30. Defendants DPSCS, Corcoran, and Gelsinger argued that they are entitled to dismissal because they did not personally participate in the alleged wrongs and Plaintiff failed to sufficiently plead supervisory liability under § 1983. ECF No. 30-1 at 9-12. Smith contends that the conditions of Plaintiff's confinement were not objectively serious enough to amount to a constitutional violation. ECF No. 30-1 at 13-15. Further, Smith argues that he lacked the requisite mental state and that Plaintiff's allegations are largely unrelated to Smith himself. ECF No. 30-1 at 15-17.

### III. Standard of Review

**A. Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at

562-63. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusional factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**B. Motion for Summary Judgment**

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted).

In *Anderson,* the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

### IV. Analysis

**A. Institutional Defendant & Individual Defendants in Official Capacity**

The Court finds that Plaintiff's 42 U.S.C. § 1983 claims against DPSCS and the remaining Defendants in their official capacities are barred by the Eleventh Amendment. The Eleventh Amendment immunizes states from suit brought in federal court without waiver from the state or a clear exercise of congressional power to override such immunity under the

Fourteenth Amendment. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Further, a suit against a state official acting in his official capacity is no different from a suit against the state itself. *Id.* at 71. The State of Maryland has not expressly waived its immunity under the Eleventh Amendment to such suits. Moreover, DPSCS is not a "person" subject to suit under § 1983. Accordingly, DPSCS and the remaining Defendants in their official capacities must be dismissed as Defendants from this action.

**B. Defendants Martin and Doe**

Plaintiff names Martin and John Doe, the Superintendent of the Psychology Department at WCI, in the caption to his complaint and the section of his complaint describing each Defendant. ECF No. 1 at 1-3. However, he fails to connect either Defendant to a particular claim or otherwise mention him in the complaint. Plaintiff does not allege that Martin was involved in the decision to place him in cell 4B2 and, although Plaintiff claims that a nurse withheld his medication on February 17, 2016, he does not identify Martin as that nurse even after Martin specifically noted this shortcoming in his Motion to Dismiss.

Plaintiff's complaint mentions four John Doe corrections officers who were allegedly involved in placing Plaintiff in cell 4B2. ECF No. 1 at 3. However, none of these John Does appear to be the John Doe, superintendent of the psychology department, identified in the caption or parties section of Plaintiff's Complaint, as the four Does referred to in the factual allegations are correctional officers, rather than medical personnel. ECF Nos. 1 at 3; 1-4 at 1-3. Likewise, there is no suggestion in the Complaint that John Doe, Superintendent of the Psychology Department, was involved in the alleged withholding of Plaintiff's medication for back pain. Indeed, Plaintiff fails to mention how his psychiatric needs or treatment plans were at all affected

7

by his 48-hour placement in cell 4B2. Accordingly, because Plaintiff has failed to connect them to any claim, Defendants Martin and Doe will be dismissed.

**C. Supervisory Defendants: Corcoran & Gelsinger**

Under § 1983, individual liability must be based on personal conduct. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). However, an individual's act of denying a "grievance does not alone impose liability." *Atkins v. Md. Div. of Corr.*, No. PWG-14-3312, 2015 WL 5124103, at *6 (D. Md. Aug. 24, 2015); *see Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[A] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.").

Further, a plaintiff cannot maintain a § 1983 action under a *respondeat superior* theory. *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978). Nonetheless, supervisory officials may, in certain circumstances, be liable "for the constitutional injuries inflicted by their subordinates." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). To show such liability, a plaintiff must allege:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* at 799 (citations and internal quotation marks omitted). Under the first prong of *Shaw*, the conduct of the supervisor's subordinates must be "pervasive and unreasonable," meaning that the "conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of constitutional injury." *Id.*

In establishing "deliberate indifference" under *Shaw*'s second prong, a plaintiff "[o]rdinarily . . . cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot . . . reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id.* Deliberate indifference, however, may be satisfied by showing "a supervisor's continued inaction in the face of documented widespread abuses." *Id.*

Plaintiff's sole allegation against Corcoran and Gelsinger is that they "violated [his] 8th and 14th Amendments to Freedom from Cruel and Unusual punishment by failing to hold accountable defendants John Doe and Lt. Smith and instigating[3] their behavior." ECF No. 1-4 at 3. This conclusory allegation fails to identify any act personally undertaken by Corcoran or Gelsinger. Further, construing this statement as alleging that Corcoran and Gelsinger denied his administrative grievances, *see* ECF No. 1-2 at 1, 5 (administrative grievances rejected by Gelsinger and Corcoran), such an allegation does not amount to a constitutional violation. *See Atkins*, 2015 WL 5124103, at *6. Finally, Plaintiff fails to adequately set forth a § 1983 claim premised on supervisory liability, as he has not alleged that the conduct of Corcoran and Gelsinger's subordinates in housing him in cell 4B2 for 48 hours and denying his medication for 24 hours amounted to "widespread" and "pervasive" conduct as required under the first prong of *Shaw*. Accordingly, Corcoran and Gelsinger are entitled to dismissal.

---

[3] Viewed in conjunction with Plaintiff's other filings, it appears likely that Plaintiff intended to say that Corcoran and Gelsinger failed by not "investigating their [subordinates'] behavior" rather than stating that they instigated the alleged unconstitutional acts of the subordinates. *See* ECF No. 32 at 1 ("Plaintiff plead with Defendant Gelsinger through institutional mail to review video surveillance footages to support his complaint. Defendant Gelsinger did not properly invetigate [sic] the Plaintiff's complaint."); *id.* at 2 ("Defendant Corcoran was notified that Defendant Gelsinger could possibly be disregarding the Plaintiff's complaints yet did not investigate the Plaintiff's complaints properly."). In any event, even if read as an allegation that Corcoran and Gelsinger instigated unconstitutional behavior, dismissal is still appropriate, as Plaintiff has failed to allege any facts to support this wholly conclusional assertion. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir. 1979).

**D. Defendant Smith**

Finally, turning to Defendant Smith, Plaintiff vaguely asserts that Smith "violated [his] Eighth and Fourteenth Amendments to Freedom from Cruel and Unusual Punishment." ECF No. 1-4 at 3. This claim can be construed in several possible ways: as a claim that Smith was deliberately indifferent to Plaintiff's medical needs, a challenge to the conditions of the cell Plaintiff was placed in by Smith, or an argument that the conditions of Staff Alert administrative segregation represented such a significant hardship compared to ordinary prison life that process was required before Plaintiff could be placed in such conditions.

**1. Deliberate Indifference to Medical Needs**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003).

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

To the extent that Plaintiff claims that Smith was deliberately indifferent to his medical needs by failing to give him his prescription medication over a 24-hour period or by exacerbating

his back condition by placing him in a cell without a mattress for two days, Plaintiff fails to allege that Smith had or should have had knowledge of these medical issues. Although Plaintiff claims that he tried to tell some corrections officers of his medical conditions during his 48-hour placement in Cell 4B2, he does not allege that Smith was one of these officers.

**2. Conditions of Confinement**

Another possible construction of Plaintiff's Complaint is a challenge to the conditions of his confinement, an issue that can implicate both the Eighth and Fourteenth Amendments. Prisoners have a liberty interest in avoiding conditions that are more burdensome or onerous than the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 483-85 (1995). Thus, before a prisoner can be subjected to atypically burdensome conditions or restrictions, the Fourteenth Amendment mandates that he first receive due process protections. *Id.*

However, some conditions of confinement may be so cruel and inhumane that they violate the Eighth Amendment's protection against cruel and unusual punishment, irrespective of any procedural protections. Conditions that "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). But conditions that are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society" and not necessarily a violation of the Eighth Amendment. *Id.* "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that the deprivation of a basic human need was *objectively* sufficiently serious, and that *subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal quotation marks and brackets omitted). Thus, in an Eighth Amendment claim based on prison conditions, a prisoner must prove that prison officials acted with "deliberate indifference." *Wilson v. Seiter*,

501 U.S. 294, 297 (1991). Specifically, prison officials have to consciously disregard a substantial risk of serious harm to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 32 (1993). Moreover, "on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

The court concludes that Plaintiff cannot succeed under either approach. The conditions Plaintiff complains of largely mirror those at issue in *Seltzer–Bey v. Delo*, 66 F.3d 961 (8th Cir. 1995). In that case, the Eighth Circuit concluded that a prisoner's Eighth and Fourteenth Amendment Rights were not violated when he was placed in a "strip cell for two days without clothing, bedding, or running water, with a concrete floor, a concrete slab for a bed, and cold air blowing on him." *Id.* at 963; *see also Williams v. Delo*, 49 F.3d 442, 444 (8th Cir.1995) (four days without clothes, mattress, water, bedding, legal mail or hygienic supplies not a violation of Eighth Amendment).[4] Likewise, the Fourth Circuit rejected a challenge under the Fourteenth Amendment brought by inmates placed in administrative segregation for six months who experienced many of the same conditions at issue in the instant case, including unsanitary cells, presence of vermin, extreme temperatures, and unappetizing food.[5] *Beverati v. Smith*, 120 F.3d

---

[4] Other courts have, albeit in unpublished opinions, rejected similar Eighth Amendment challenges to short-term confinement without clothing and/or a mattress. *Lowery v. Bennett*, 492 F. App'x 405, 407, 410 (4th Cir. Aug. 9, 2012) (unpublished) (10-day placement on strip-cell confinement, which included removal of prisoner's personal hygiene items, religious books, mattress, bedding, towels, and clothing, did not violate Eighth Amendment); *Phillips v. East*, 81 F. App'x 483, 485 (5th Cir. Nov. 24, 2003) (unpublished) ("The denial for two and one-half days of a mattress, a blanket, and toilet paper, without more, to an inmate with a cold confined indoors does not constitute a deprivation of the minimal civilized measures of life's necessities."). Additionally, one court noted 18 days' confinement without a functioning toilet or mattress resulting in "stiffness, lower back pain, headaches, vomiting, constipation," and various emotional stresses did not amount to an Eighth Amendment violation. *Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. May 12, 2010) (unpublished).

[5] Although *Beverati* did not consider an Eighth Amendment challenge, if conditions are not so atypical or burdensome as to trigger due process protections, such conditions could not be so inhumane as to violate the Eighth Amendment.

500 (4th Cir. 1997). The *Beverati* court concluded that, although burdensome, undergoing the following conditions of the prisoners' confinement for six months did not amount to an *atypical* burden compared with ordinary prison life:

> They claim that when they were initially placed in segregation, their cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, they assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

*Id.* at 504. Between *Seltzer–Bey* and *Beverati*, all of the conditions with which Plaintiff takes issue were considered (often in conjunction with more severe conditions like a lack of running water or six-month time frame) and found not to pose an atypical burden compared with ordinary prison life. Accordingly, Smith is entitled to summary judgment, as Plaintiff has failed to present sufficient evidence that Smith subjected him to unconstitutional conditions by placing Plaintiff in Cell 4B2 for two days without due process.

**E. Additional Note about Retaliation Allegations**

After initiating this action, Plaintiff stated that he was being retaliated against due to filing his § 1983 complaint. ECF Nos. 6, 14. However, Plaintiff did not identify the particular individuals who were retaliating against him nor did he provide any specific details of the retaliatory actions he suffered, with two exceptions. First, he claimed that "I have already been subjected to having my mail with[h]eld and I have not received anything from the courts since the order . . . [dated] January 18, 2017." ECF No. 6. However, at the time Plaintiff wrote this statement, this court had not sent any communications to Plaintiff since the January 18 order.

13

Second, he claimed that he was "forcefully placed on disciplinary segr[e]gation for no good cause and when I tried to use the camera as my defense the institution told me they were unable to access the tape and now I am just sitting here waiting to prove my innocence." ECF No. 14. In his Response to the Motion to Dismiss, however, Plaintiff undercuts his own assertion. *See* ECF No. 32-1 at 21 (notice of rule violation containing eyewitness officer's summary of the alleged violation that prompted Plaintiff to be placed in administrative segregation pending his adjustment hearing, contradicting claim that there was "no good cause" for housing placement); *id.* at 26-27 (notes from the hearing stating that Plaintiff was found not guilty of the violation because the tape of the incident was blank). Thus, while pro se litigants are entitled to liberal construction, the court will not construe Plaintiff's letters asserting retaliation as amendments or supplements to the complaint, as these claims lack specific and potentially credible factual support.

## V. Conclusion

For the foregoing reasons, Defendant Doe and all Defendants in their official capacity shall be DISMISSED. Defendant Martin's Motion to Dismiss shall be GRANTED. As to the remaining Defendants, the court GRANTS the Motion to Dismiss as to Defendants DPSCS, Corcoran, and Gelsinger, and GRANTS the alternative Motion for Summary Judgment as to Defendant Smith. A separate order follows.


IT IS SO ORDERED

Date: November 8, 2017 _____/s/_____
James K. Bredar
Chief Judge